**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


UNITED STATES OF AMERICA,   )
             )
    Plaintiff,     )
             )
             )  Case No. 3:19cr44/MCR
             )
vs.          )  Pensacola, Florida
             )  January 17, 2020
             )  5:18 p.m.
             )
GUYLAND W. THOMPSON,    )
             )
    Defendant.     )
_____)


**FINDINGS AND JUDGMENT**


EXCERPT TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE
(Pages 1-21)



FOR THE GOVERNMENT:  ALICIA H. FORBES, ESQUIRE
          United States Attorney's Office
          21 East Garden Street, Suite 400
          Pensacola, Florida  32502

FOR THE DEFENDANT:   RYAN M. CARDOSO, ESQUIRE
          Attorney at Law
          730 Bayfront Parkway, Suite 4A
          Pensacola, Florida  32502

1        P R O C E E D I N G S

2        **THE COURT:**   In imposing a sentence in any case, the law

3   requires that I consider a number of factors.  I have to

4   consider the nature and circumstances of the offense, and I do

5   that and balance the nature and circumstances of the offense

6   with the history and characteristics of the defendant.

7        But, in the end, any sentence that I impose in any

8   case must provide just punishment to the defendant for his

9   crimes, must also promote respect for the law, must provide

10  specific and general deterrence, must ensure that similarly

11  situated defendants are treated similarly in sentencing, and

12  must also provide for protection of the public.

13       So I'll start with the nature and circumstances of the

14  offense in this case.  The information is 23 counts, 20 of

15  which dealt with wire fraud which was the embezzlement and

16  three counts of tax evasion.

17       What you've heard here today and what is charged in

18  the information and what Mr. Thompson has pled guilty to is

19  that, over a seven-year period, three years of which he also

20  served as mayor of the City of Milton, that Mr. Thompson

21  orchestrated a complex embezzlement scheme in which he stole

22  over $650,000 in charitable donations from one of Santa Rosa

23  County's most longstanding and reputable charitable

24  organizations, that being United Way of Santa Rosa County and

25  that also being an organization that Mr. Thompson led for

1    nearly 40 years.

2          Some may not consider white collar crime as serious as

3    other crimes, but that view is most likely held by people who

4    have never been the victim of fraud or theft.  Make no mistake

5    that white collar crime is serious.  It devastates lives,

6    families, in some cases businesses, and in this case a

7    community.

8          And here Mr. Thompson's crime is particularly serious,

9    not just because of the large amount of the loss or the money

10   that he embezzled from the United Way of Santa Rosa County,

11   which is serious enough in and of itself, but also because, in

12   doing so -- and this has been referenced -- but in doing so, he

13   abused the community's trust.

14         To the extent that one white collar crime of

15   embezzlement can be considered worse than another, Mr.

16   Thompson, this would rank towards the top.  You were a sitting

17   mayor of 20 years who stole from a beloved local charitable

18   organization that served the most vulnerable and needy in your

19   community, and you did so for seven years.  And as I said,

20   three of those years you were actively serving as mayor as you

21   were stealing from this charity that you served at the head of

22   for nearly 40 years.

23         I don't know you personally, so I can't claim to be as

24   shocked as those here in the courtroom who have known you for

25   many years.  But I have to tell you, this is inexplicable to

1    me.  And the only thing that explains it -- and again, I don't

2    know you personally, but the only thing that explains it to me,

3    as someone who has presided over a countless number of fraud

4    cases, is greed, pure and simple.  That's the only thing that

5    explains it to me.

6          But to say that this crime has shaken Santa Rosa

7    County, and in particular the City of Milton, to say that it

8    has shaken that community is an understatement.  I've received

9    countless letters from people on your behalf, but I've also

10   received countless letters from community members who are in

11   despair over the damage that has been caused to the community

12   by your crimes.

13         Understandably, there is a lack of trust in community

14   leaders and in charities in general, which has, in turn, no

15   doubt raised skepticism and increased doubt in the minds of

16   would-be donors who are now less likely -- and we just heard

17   this from one of the victims -- less likely to give to

18   charitable organizations and further which has degraded the

19   community's trust and faith in public officials.

20         You were able to commit -- and I'm not going to call

21   it a crime.  It was crimes.  It was hundreds of separate

22   crimes.  But you were able to do that because you were, in

23   fact, so trusted and so esteemed in the community.  No one

24   questioned your conduct.  The bank tellers who knew you and

25   trusted you, the board members who worked with you and trusted

1    you, the employees, no one questioned these transactions or

2    your ability to handle the organization's funds.  And why would

3    they?  You were the mayor of the city.  You had the entire

4    city's faith, trust, and confidence.  So the crime is of the

5    most serious kind.

6           The Guidelines have applied an enhancement for abuse

7    of public trust, but I don't think the Guidelines truly capture

8    the type of violation of trust that has occurred here.

9           Something else that has not really been mentioned --

10   it was briefly mentioned by Mr. Orbison, I believe -- or I'm

11   sorry, I may have the victim's statement identified

12   incorrectly.  But the Gulf Power and Eastman Chemical

13   employees, those were employees for all those years -- and I

14   should note the Government only knows about seven years and you

15   led that organization for nearly 40.  And the only reason

16   they're limited in their knowledge as to those seven years is

17   because that's all the records the bank had.  There's no way to

18   trace cash.

19           But these employees, for at least seven years, they

20   made contributions out of their pay.  Some of these people were

21   most likely -- and I don't think it's speculation for me to say

22   this -- were minimum wage earners, and they made payroll

23   deductions which the employer then paid to United Way of Santa

24   Rosa County on their behalf.  But they made those contributions

25   believing in their hearts that that money was going to go

towards the needy and the vulnerable of Santa Rosa County.  So

you stole from them just as much as you stole from the United

Way of Santa Rosa County.  You certainly deprived them of their

intention for their money that they worked for.

Turning to the history and characteristics of Mr.

Thompson.  By all accounts -- and we heard this very eloquently

presented by Mr. Cardoso -- until this scheme was revealed, he

was revered in the community.  He made substantial

contributions to better the community through years of public

service and public good works.  Mr. Thompson has no criminal

history and, again, a career of public service.

There have been countless letters -- I referenced that

a minute ago -- to me in support of his good character and

community service.  He certainly --

I believe you may have been the founder of the United

Way of Santa Rosa County.  If not, you certainly helped to

establish it and grow that organization, which for nearly 40

years served many charities, local schools, and consequentially

that charity aided many people in need of service over the

years, and you were certainly part responsible for that.

But it's also evident that your ability to commit this

crime, as I said a minute ago, over a period of the seven years

that are charged was enabled by the very reputation that you

built in public service.  And I just can't say enough about

that, that Mr. Cardoso was asking me to take that into account

1    in mitigation, and he's even asking for a probationary

2    sentence, but that's precisely what allowed you to do what you

3    did.  And that's hard for me to accept.

4          And I do believe that one mistake does not condemn a

5    man for all time and that your good works that were separate

6    and apart from your crime, they will exist long after this

7    crime is forgotten.  They will exist in that community.  The

8    places that Mr. Cardoso spoke about, they will exist and will

9    be enjoyed by that community long after we are gone and this

10   crime is forgotten.

11         But those good works don't undo or overshadow the harm

12   that has occurred here.  This crime was not a one-off theft.

13   It was a conscious and calculated scheme to deceive and

14   embezzle hundreds of times -- over and over again -- from the

15   people you served and the people who trusted and admired you.

16         Also, in terms of your history and characteristics, I

17   do take into account your age of 66 years of age.  I take into

18   account your health and the health problems that you have.  You

19   suffer from hypertension and heart trouble, albeit controlled

20   with medication.  You now have a pacemaker.  You also suffer

21   from depression and, we now know from Dr. Groom, mild cognitive

22   impairment.

23         But I do not believe that your medical needs are such

24   that they would require home confinement.  The Bureau of

25   Prisons certainly can and does accommodate much more serious

1  medical needs than you present with, Mr. Thompson.

2          Looking to the factors of what my sentence must take

3  into account and provide for, as I said, just punishment.  I

4  must take into account the Guidelines range that the Sentencing

5  Commission has said is called for in a case such as this.

6          My sentence must promote respect for the law, which

7  means justice for the victims.

8          It must also ensure protection of the public.  And I

9  will say that I am not concerned about you harming the public

10  in the future.  That is not an overriding consideration for me,

11  given your age, given your sincere -- which I credit as sincere

12  remorse and regret.

13          The sentence must also ensure that similarly situated

14  defendants are treated similarly at sentencing, and so I take

15  into account other sentences that I have imposed in similar

16  types of cases.  And Mr. Cardoso submitted examples of

17  sentences in similar types of cases throughout our circuit, and

18  I'm certainly aware of the sentences that have been imposed by

19  my colleagues on this court in similar types of circumstances,

20  as similar as similar can be when every case, as we know, is

21  unique to its own facts.

22          The other thing that my sentence must do is it must

23  provide for specific as well as general deterrence.  Specific

24  deterrence meaning deterrence to you, Mr. Thompson, in an

25  effort to ensure that you don't commit the same type of crime

1   or, frankly, any crime.  But the same type of crime in the

2   future is not a big concern of mine.  General deterrence, on

3   the other hand, is a significant concern of mine.

4           General deterrence is particularly important in white

5   collar crime cases.  And in my view, in this case, because of,

6   as I noted, the extreme abuse of the public trust that has

7   occurred here, I do believe a Guidelines sentence is

8   appropriate.

9           And it is my hope that that Guidelines sentence here

10  today will send a message to those who have the privilege of

11  serving the community in a position of trust, send a message to

12  those who have the privilege of serving the public that

13  self-profit and greed have no place in public service, no place

14  whatsoever.

15          My decision, as I said, will be a Guidelines sentence,

16  but it will be at the lowest end of the Guidelines at 51

17  months.  I impose the sentence at the low end of the Guidelines

18  taking into account, again, Mr. Thompson's age, his health, and

19  also the fact that, under the Guidelines in 2B1.1, the loss

20  amount results in a 14-level adjustment and that is for a loss

21  amount of $550,000 to $1.5 million.  And in my view, the loss

22  amount here falls closer to the lower end of that, so I've

23  taken that into account as well.

24          And again, the Government has asked for the highest

25  end of the Guidelines range.  I'm rejecting that request and

1   imposing a sentence at the low end of the range.

2           Mr. Thompson, I am not going to take you into custody

3   today.  I don't see the need for that.

4           Unless, Ms. Forbes, if you'd like to make a record or

5   object to that and argue to the Court for a remand today, I'll

6   hear from you.

7           **MS. FORBES:**  No, Your Honor.

8           **THE COURT:**  So, Mr. Thompson, I am going to give you a

9   reporting date of March 2nd.  You will be required to report to

10  the designated institution by that date at twelve noon wherever

11  that institution is located.

12          I am going to recommend that you be designated to

13  serve this sentence at the Federal Prison Camp in Pensacola.

14  I'm also, though, going to recommend that you be thoroughly

15  evaluated in terms of your medical and health condition.

16          And if the Bureau of Prisons deems it appropriate to

17  designate you to a federal medical center, then certainly the

18  Court has no objection to that and would recommend that if the

19  BOP believes that that is the most appropriate designation.

20  But absent a medical center designation, my strong

21  recommendation will be for the prison camp here in Pensacola.

22          I don't have the authority to designate you to any one

23  institution.  That is something that is done by the Bureau of

24  Prisons after applying a number of different criteria that they

25  have to apply in deciding where to designate someone.  But they

1    will take my recommendation into account, and I believe they

2    will follow it if at all possible.

3         Now, Ms. Forbes and Mr. Cardoso, the matter of

4    restitution, I am going to defer a ruling on that.  I want to

5    confirm, though, Ms. Forbes, that you are seeking restitution

6    on behalf of the United Way of Santa Rosa County in the amount

7    reflected in the exhibits that Mr. Holley testified to, the

8    $2.334 million, as well as restitution on behalf of, I believe,

9    Mr. Denson and Ms. Jennings in the full amount of their

10   request.

11        Is that what the Government is seeking?

12        **MS. FORBES:**  Yes, Your Honor.  As to Ms. Jennings, we

13   were never provided an exact number, so I don't know --

14        **THE COURT:**  Well, what would you have me do with

15   Ms. Jennings, then?

16        **MS. FORBES:**  I don't know that there's anything that

17   the Court can do without a number.  But we are asking for the

18   other restitution requests.

19        And with respect to Interfaith Ministries, we would

20   sort of lump them into -- as provided in Government's Exhibit

21   6, we would ask that the restitution be separated out per these

22   percentages, whatever ultimately does get ordered, to each of

23   the charities.  So that would cover that request.

24        And I do believe that Mr. Cardoso, on behalf of Mr.

25   Thompson, does not have an objection to restitution going

1    directly to the individual charities as well as to United Way

2    of Santa Rosa County.

3            **THE COURT:**  Well, I'm going to set another argument on

4    this issue, and I may even ask for separate briefing from each

5    of you.

6            For instance, while I don't -- my heart goes out to

7    Mr. Denson, but I'm not sure Mr. Denson is a victim here under

8    the law.

9            And I know you made the argument, Ms. Forbes, that Mr.

10   Thompson, as part of restitution, he agreed -- excuse me, as

11   far as restitution as part of his plea agreement, he agreed to

12   make restitution for harm to anyone as a result of relevant

13   conduct that flowed from that conduct.

14           But the statute states that, if there is to be

15   restitution to anyone who is not a victim, in other words,

16   anyone who did not suffer an actual loss as a result of the

17   commission of the offense, that that person has to be

18   identified and agreed to in the plea agreement.  And we don't

19   have that.

20           So I'm just giving you the benefit of my preliminary

21   thoughts on this.  Again, I'm going to allow you to most likely

22   brief it, but I'll certainly invite you back here to discuss

23   this with me in more detail.

24           Likewise, the full $2.3 million that's been requested

25   on behalf of the United Way of Santa Rosa County, we need to

1   have more discussion about that.  What Mr. Holley testified to

2   in Exhibit -- I think it's 5, the breakdown, there's no

3   consideration of any expenses, and this would be a windfall to

4   the United Way of Santa Rosa County.  Restitution is not

5   intended to be a windfall.

6           There's no question the $652,000 is supported and is

7   valid restitution and will be ordered in this case.  We can

8   talk again later as to whether that's directly paid to the

9   United Way of Santa Rosa County.  I was under the impression,

10  until either late yesterday or today, that they had dissolved,

11  and so now I know that's not the case.

12          So, whether that goes directly to that organization,

13  who then distributes it to the charities, or whether it goes

14  directly to the charities, we can talk about that when we

15  reconvene to discuss restitution.

16          I'll get that hearing scheduled just as quickly as I

17  can.  I'm not putting it off for 90 days.  It's not as though

18  it's not calculable.  It's just I have questions about the law,

19  and I don't feel like I had sufficient briefing on it.  I know

20  you had a lot of other things to brief.  So I would like to

21  take more time to consider that.

22          Mr. Thompson, I do need to formally pronounce your

23  sentence, so I'll ask you to please rise at this time.

24          *[Defendant complies.]*

25          Mr. Thompson, at this time, you are formally

1    adjudicated guilty of Counts 1 through 23 of the information,

2    and that is consistent with your plea of guilty to the charges.

3    I do find that the Presentence Investigation Report is

4    accurate.  I order the findings of the report incorporated into

5    the following sentence:

6    Pursuant to the Sentencing Reform Act of 1984 and all

7    amendments to that law, it is the judgment of this Court that

8    the Defendant, Guyland W. Thompson, is hereby committed to the

9    custody of the Bureau of Prisons to be imprisoned for a term of

10   51 months as to each of Counts 1 through 23, with those terms

11   to run concurrently one with the other.

12   As indicated, I strongly recommend to the Bureau of

13   Prisons that Mr. Thompson be designated to serve this sentence

14   at the Federal Prison Camp in Pensacola, otherwise known as

15   Saufley Field.  But I do want him medically evaluated.  I would

16   like all of his medical records that Mr. Cardoso has presented

17   to me to be included as part of the Presentence Report that is

18   sent to the BOP.

19   **U.S.P.O. NEWSOME:**  Yes, Your Honor.

20   **THE COURT:**  And also Dr. Groom's report as well as Dr.

21   Bingham's.

22   Mr. Thompson, given the amount of restitution that

23   will be ordered in this matter, I find that you don't have the

24   ability to pay any other type of financial penalty, and so I'm

25   going to waive imposition of a fine.

1    However, there is a forfeiture money judgment in the

2    amount of $430,132.33 that is in addition to the restitution.

3    And because of that, I am waiving the fine.

4    However, pursuant to law, there is a special monetary

5    assessment that is due and payable -- it's nonwaivable and it's

6    due and payable immediately.  It's $100 for each of the 23

7    felony counts of conviction for a total of $2,300.

8    You may be seated, Mr. Thompson.

9    *[Defendant seated.]*

10   When you're released from custody, you'll be placed on

11   a period of supervision for a term of three years as to the 23

12   counts, those terms to run concurrent one with the other.

13   Supervision will be under the mandatory and standard conditions

14   adopted in this district together with the following special

15   conditions:

16   You'll be evaluated for mental health and referred to

17   treatment as deemed necessary through an evaluation process.

18   You may be tested for the presence of illegally controlled

19   substances or alcohol during the term of your supervision.

20   You will be prohibited from holding any employment

21   associated with the operation of a charitable organization.

22   Any unpaid restitution balance must be paid in monthly

23   installments of not less than $500 per month to commence either

24   within one month of your release from custody -- I will make it

25   30 days from your release from custody.

1          You'll be required to provide the probation office

2     with all requested financial information, both business as well

3     as personal.  You must not incur any new credit charges or open

4     any additional lines of credit without the prior approval of

5     your probation officer, unless and until your restitution and

6     money forfeiture judgment obligations are satisfied.  The same

7     is true of disposing of any asset or your interest in any

8     asset, you may not do that until you have satisfied those

9     financial obligations.

10          There is also restitution ordered in the amount of

11    $159,362.00 plus interest on Counts 21 through 23, and that is

12    payable to the IRS.

13          Mr. Newsome, you've recommended another $500 per

14    month?

15          **U.S.P.O. NEWSOME:**  Your Honor, I believe the initial

16    one would be sufficient.  And we do have the address we'll

17    reflect on the judgment for the Internal Revenue Service

18    payment, Judge.

19          **THE COURT:**  All right.

20          I am waiving interest on the restitution on the fraud

21    counts.

22          Am I correct that the interest is nonwaivable on the

23    IRS restitution, or is it?

24          **U.S.P.O. NEWSOME:**  Judge, I believe it is generally

25    ordered as part of the IRS restitution plus interest.

1      **THE COURT:**  That was my thinking, so I'm going to

2  order it in connection with the IRS restitution but not the

3  fraud restitution, given the amount of all of the financial

4  obligations Mr. Thompson will have.

5      Mr. Thompson, as a result of the felony convictions,

6  you'll also be subject to our standard felony search condition

7  during the term of your supervision that's outlined in your

8  Presentence Investigation Report.

9      Earlier I said that you may be tested for the presence

10  of illegally controlled substance or alcohol, but I've decided,

11  Mr. Thompson, that, given what I know about your history and

12  from what's in the Presentence Report, I believe you're a very

13  low risk for any substance abuse problem, and therefore I'm

14  going to suspend that drug testing condition.

15      You won't be subject to drug testing during the term

16  of your supervision, unless something changes and it becomes

17  apparent that that's an issue for you.  Otherwise, I'm going to

18  suspend that condition, which I have the authority to do, based

19  on my finding that you pose a very low risk for substance abuse

20  in the future.

21      I have considered all of the factors in 18 U.S.C.

22  3553(a).  I've stated the basis for my decision in this case.

23  I do find that a total sentence of 51 months' imprisonment with

24  total restitution to be determined at a later time in terms of

25  the fraud counts, that that is sufficient but not greater than

1  necessary to comply with the purposes of sentencing set forth

2  under the law.

3          Again, Mr. Thompson, your surrender date will be March

4  2nd.

5          Now, Mr. Cardoso, if a designation has not been made

6  by the Bureau of Prisons by that date, you are free to notify

7  me of that a few days prior to that surrender date.  And if

8  that be the case, if there are no violations or anything

9  troublesome in Mr. Thompson's supervision, then I have no

10  reason to think I wouldn't extend the surrender date.  The

11  point of this is that I don't believe he needs to spend any

12  time in the county jail.

13          **MR. CARDOSO:**  Thank you, Your Honor.

14          **THE COURT:**  So if you'll just make me aware of that.

15          Mr. Thompson, you will be required, as I said, to

16  voluntarily surrender.  I can't tell you where your institution

17  will be.  I'm hoping it will be Pensacola.  It may not be.

18  Wherever it is, you will have to surrender there at your own

19  expense.

20          If you cannot afford the cost of travel to wherever

21  that institution is, then your surrender will be here to the

22  courthouse at the Marshals Service at 12:00 noon Central Time

23  on March 2nd, unless that's otherwise changed by order of the

24  Court.

25          Mr. Cardoso, is there anything else you would like to

1  place on the record at this time?  All of your objections are

2  preserved in the record.

3        **MR. CARDOSO:**  Thank you, Your Honor.  No, there's

4  nothing further I'd like to present.

5        **THE COURT:**  Thank you.

6        Ms. Forbes, from the Government?

7        **MS. FORBES:**  Your Honor, we would just ask the Court

8  to formally pronounce the final order of forfeiture that was

9  also -- I know the --

10       **THE COURT:**  Did I sign the final order already or just

11  a preliminary?

12       **MS. FORBES:**  You signed the final order this week,

13  Your Honor.  So I would ask that that be orally pronounced and

14  incorporated -- that would be Document 38 -- that it be

15  incorporated as part of the judgment.

16       **THE COURT:**  All right.  I would prefer to just

17  reference Document 38 and incorporate it --

18       **MS. FORBES:**  I'm sorry, Your Honor, I think it's 36.

19  I might have the number wrong.

20       **THE COURT:**  Let me ask Ms. Simms.  I sign a lot of

21  orders in a week and I'm not --

22       **MADAM CLERK SIMMS:**  It's 38.

23       **THE COURT:**  38, all right.

24       Document 38 will be incorporated into the judgment.

25  And Mr. Thompson's interest in all of the property outlined in

1   that forfeiture order is hereby forfeited to the United States

2   and will be reflected in the judgment.

3           **MS. FORBES:**  Thank you, Your Honor.  That's all.

4           **THE COURT:**  Mr. Thompson, are you aware of that order

5   or do you need me to go over those items of property?

6           **MR. CARDOSO:**  We've discussed it, Your Honor.  I'll

7   make sure we go over it again, but we've discussed it.

8           **THE COURT:**  All right.  Thank you, sir.

9           Mr. Thompson, you do have the right to appeal from

10  this sentencing decision.  If you choose to do so, your notice

11  of appeal must be filed within 14 days of the date of the

12  Court's written judgment, not today's date.

13          What I have pronounced orally as your sentence here in

14  open court will be reduced to writing, it will be filed in our

15  court docket sometime within the next week or two.  Your time

16  to appeal, if you choose to do so, runs from that date, again,

17  not today's date.

18          If you cannot afford the cost of an appeal, you may

19  file for leave to appeal at no cost to you.  Mr. Cardoso will

20  talk to you further about your appeal rights.  But do keep in

21  mind the 14-day window is strictly enforced and, if you intend

22  to challenge this sentence on appeal, you should do so within

23  that time frame.

24          Good luck to you, Mr. Thompson.  I hope that you'll be

25  able to put this behind you.

1            The Court will be in recess.

2              *(Proceedings concluded at 5:52 p.m.)*

3                   --------------------

4     *I certify that the foregoing is a correct transcript from the*
      *record of proceedings in the above-entitled matter.  Any*
5     *redaction of personal data identifiers pursuant to the Judicial*
      *Conference Policy on Privacy are noted within the transcript.*

6

7
      *s/Donna L. Boland*                          *7-23-2020*
8     *Donna L. Boland, RPR, FCRR*                 *Date*
      *Official Court Reporter*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25